**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**STATE OF FLORIDA,**
**DEPARTMENT OF REVENUE,**

    **Appellant,**

vs.                                                                                          Case No.: 3:07-cv-510-J16

**TIMOTHY S. TALLEY,**

    **Appellee.**

_____/

## **ORDER**

Appellant, the State of Florida, Department of Revenue (the "Department") files this appeal asking the Court to find that the bankruptcy court erred in confirming the Chapter 13 Plan (the "Plan") of Appellee, Mr. Timothy S. Talley ("Talley"), over the Department's written objection (the "Objection"). The Department claims that the Plan, as orally modified during the January 30, 2007, confirmation hearing (the "Confirmation Hearing") did not meet the requirements of 11 U.S.C. § 1325(a). The Department asks the Court to remand this case to the bankruptcy court for further hearings.

**I.**     **Background**

Talley filed a petition for bankruptcy relief under Chapter 13 of the United States Bankruptcy Code on October 31, 2006. The Department filed a revenue claim for a domestic support obligation on November 20, 2006, in the amount of $12,856.84 (the "Claim"). Talley did not file an objection to the Claim. Under the terms of a Support Enforcement Order dated August 15, 2003 (the "August 2003 Enforcement Order"), Talley is supposed to pay $209.00 in weekly child support for the foreseeable future, plus an additional $21.00 per week until his $7,204.00 retroactive support

obligation is paid in full. (Dkt. 1, Ex. 11 at p. 6).[1]

Talley filed an Amended Chapter 13 Plan (the "Amended Plan") on January 17, 2007, which reads, in pertinent part, that Talley's debt of $12,856.84 would be paid "outside of the plan by income deduction order."[2] ( Bankr. Dkt. 22).  The Department filed a written objection to the Amended Plan on January 29, 2007.  The bankruptcy court held the Confirmation Hearing on January 30, 2007.  Department representatives did not attend the Confirmation Hearing.

During the Confirmation Hearing, Talley's attorney asked the bankruptcy court to "amend the First Amended Chapter 13 plan in regard to the priority claim of the State of Florida" so that the second sentence would read "[t]he debtor shall pay this debt in full outside the plan." (Dkt. 1, Ex. 13 at p. 4).  It was also revealed during the Confirmation Hearing that Talley was "behind by $2,867.40, or three out of three payments."  (Dkt. 1, Ex. 13 at p. 4). Talley's attorney produced cashiers checks demonstrating that Talley had recently made two payments (one for $900.00 and one for $1,189.00) to reduce his arrearage of $2,867.40. (Dkt. 1 Ex. 13, at p. 4).  At the Conformation Hearing, the Chapter 13 Trustee ("Trustee") recommended confirmation of the Amended Plan. (Dkt. 1, Ex. 13 at p. 5).  Finally, during the Confirmation Hearing, the bankruptcy court confirmed the Amended Plan (with the caveat that the remaining arrears be cured within 60 (sixty) days) and entered an order to that effect on February 15, 2007 (the "Amended Plan Order").

The Department filed a timely Motion for Reconsideration (the "Motion") and a hearing on the Motion was held on March 28, 2007.  On April 17, 2007, the bankruptcy court issued an order denying the Motion without further explanation.  This appeal followed.

---

[1] Rhonda Miller and State of Florida, Department of Revenue v. Timothy Scott Talley, Case No. 02-2153-DR, Div. E, in the Fourth Judicial Circuit, in and for, Clay County, Florida.

[2] The Court assumes that the "income deduction order" refers to the August 2003 Enforcement Order.

**II.     Standard of Review**

Because the district court sits in an appellate capacity when reviewing the determination of a bankruptcy court, the district court applies the same standards as do appellate courts when reviewing other cases. See Deramus v. Bank of Prattville, 180 B.R. 665, 667 (M.D. Ala. 1995). The bankruptcy court's conclusions of law are therefore reviewed *de novo*, requiring the district court to independently examine the law and to draw its own conclusions after applying the law to the facts, without regard for the decision of the bankruptcy court. See, e.g., Nordberg v. Arab Banking Corp., 904 F.2d 588, 593 (11th Cir. 1990); Reliance Ins. Co. v. Enstar Group, Inc., 192 B.R. 579, 580, n.3 (M.D. Ala. 1996). However, a bankruptcy court's findings of fact are reviewed under a "clearly erroneous" standard. See Nordberg, 904 F.2d at 593.

**III.    Discussion**

The parties' briefs were certainly that - brief.  The Department barely laid out its argument and failed to provide the Court with anything other than citations to the bankruptcy code in support of its argument.  Talley provided the Court with a procedural defense and never addressed the Department's substantive arguments.  While, this lack of analysis might be expected in a case where the record is so scant, it does not excuse the parties from providing the Court with adequate legal support to define and bolster their respective arguments.  The Court's sole motivation in reaching the merits of the Department's appeal is that somewhere, perhaps, the needs of a minor child are not being met.  Thus, the Court proceeds with its analysis.

The Department argues that the Claim is entitled to priority pursuant to 11 U.S.C. § 507(a)(1) and Talley's plan fails to meet the requirements of 11 U.S.C. § 1325.  The Department informs the Court that at the Confirmation Hearing, the bankruptcy court accepted the Amended Plan to pay the

Department "outside of the plan by income deduction order" without inquiring as to whether the requested change would bring the Amended Plan into conformity with § 1325 or directly acknowledging the Department's objection. The Department acknowledges that the bankruptcy court's order contains a provision which reads that the Amended Plan complies with the provisions of 11 U.S.C. § 1325.

Talley responds that the bankruptcy court's Notice of Commencement (Bankr. Dkt. 9) required anyone objecting to the Amended Plan to appear at the Confirmation Hearing or waive any objections it might have to the Amended Plan. The Department failed to appear at the Confirmation Hearing, so its objection is waived and it cannot be heard to complain now. Talley further informs the Court that the Amended Plan complies with the written objections raised by the Department.

The Department responds that Talley's only defense is technical, not substantive. In addition, the Department claims that while an objection may be waived if not properly raised, here the Department filed a written objection. The Department further claims that under Section 1322(a)(2), full payment must be made to a priority creditor unless there is a writing demonstrating an agreement otherwise. The Department claims that waiver is not possible because under Section 1322(a)(2), if less than full payment is to be made under a repayment plan, a debtor is under an affirmative duty to demonstrate that there is an agreement between the parties to that effect.

**Talley's Position**

Talley's procedural defense is unpersuasive. There is no express requirement that an objecting party appear at a confirmation hearing. 5B Fed. Proc., L.Ed § 9:1641. It has been noted that attendance by the objecting party is implicitly required in order to have the objection heard and that the failure of a party to appear to pursue its objection may result in a court's concluding that the

4

objecting party has abandoned its objection and the bankruptcy court's dismissing the objection for want of prosecution.[3] Id. (citing to In re Powell, 15 B.R. 465 (Bankr. N.D. Ga. 1981)).

Review of the Confirmation Hearing's transcript reveals that the bankruptcy court did not acknowledge the Objection. The bankruptcy court did not dismiss the Objection outright. Instead, the bankruptcy court's failure to acknowledge the Objection served as a *de facto* dismissal. However, *de facto* dismissal is not sufficient in this case. Had the bankruptcy court actually dismissed the Objection on the record, it might have ended the Court's inquiry here. However, even in the absence of a filed objection, the bankruptcy court has an independent obligation to insure that certain Chapter 13 requirements are met. Also, under Fed. R. Bank.P. 3015(f) the bankruptcy court can determine that a plan has been proposed in good faith without a hearing and without receiving evidence on the issue. Once the Objection was filed, the bankruptcy court should have conducted an evidentiary hearing to determine if the Amended Plan was proposed in good faith.

**The Department's Position**

Because the law and facts are not contested,[4] the Court shall not engage an the exhaustive recitation of them. In short, Section 1325(a) reads, in pertinent part, that "(a) Except as provided in subsection (b), the court shall confirm a plan if - (1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title . . ." Section 1322(a)(2) requires a modified plan to provide for the full payment of all priority unsecured claims, unless the holder of a particular claim agrees to a different treatment. The section reads that:

---

[3] The Court was unable to find a Local Rule requiring waiver or dismissal for failure to appear and Talley did not cite to one in support of his argument.

[4] Talley does not contest that he owes child support; that the Department's claim is entitled to priority status; or that he bears the burden of proof.

5

> (a) The plan shall -
>  . . . .
> (2) provide for full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title unless the holder of a particular claim agrees to a different treatment of such claim . . . ."

Sub-sections 507(a)(1)(A) and (B) allow a priority claim for domestic support obligations. Pursuant to 11 U.S.C.A. § 101(14A),[5] the term "domestic support obligation" means:

> [A] debt that accrues before, on, or after the date of the order for relief in a case under this title . . . that is (A) owed or recoverable by -
> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
> (ii) a governmental unit;
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of -
> (i) a separation agreement, divorce decree, or property settlement agreement;
> (ii) an order of a court of record;
>  . . . .

Section 1325(a)(3) provides that a court shall confirm a plan if, among other reasons, "the plan has been proposed in good faith." If a creditor raises a good faith objection, the burden then shifts to the debtor to show good faith. As the debtor, Talley, bears the burden of proving that the proposed plan meets all of the elements for confirmation found in § 1325. As the bankruptcy court found in <u>In re</u> Poole, 2007 WL 4977776 (Bankr. D.S.C.) (October 18, 2007):

> So allocating the burden of proof is consistent with the scheme of § 1325. That section provides that "[t]he court shall confirm a plan if" certain conditions, including the good faith proposal requirement, are met. § 1325. "[I]rrespective of any objections to confirmation," section 1325 imposes on the bankruptcy court an independent "duty to insure compliance with the provisions of the Bankruptcy Code. Therefore, the bankruptcy court is not a rubber stamp. It must scrutinize every proposed plan, regardless of whether someone objects.

---

[5] This definition appears in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

> Thus, in ascertaining whether a Chapter 13 plan warrants confirmation, the bankruptcy court always and necessarily will turn to the debtor proposing the plan. The interposition of an objection to confirmation surely does not relieve the Chapter 13 debtor from the ordinary burden of proving the right to bankruptcy relief.

In re Poole, 2007 WL at *5-6 (Bankr. D.S.C.) (October 18, 2007) (citing to Tillman v. Lombard, 156 B.R. 156 (E.D. Va. 1993) (internal citations omitted).

"Good faith," however, is not a defined term. Rather, it is the totality of circumstances surrounding the debtor's actions in his Chapter 13 case that are relevant. Some factors used to determine good faith are: an analysis of the debtor's income and expenses; the duration of the Chapter 13 plan; the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13; the degree of effort exercised by the debtor; the debtor's ability to earn and the likelihood his earnings will fluctuate; the circumstances under which the debtor has contracted his debts; and, his past dealings with his creditors. In re Kitchens, 702 F.2d 885, 888-889 (11th Cir. 1983). The guiding principle is whether the debtor's proposed Chapter 13 plan demonstrates a sincere intent to repay his creditors to the best of his ability as opposed to instead demonstrating an attempt to defer or avoid the claims of legitimate creditors. The basic inquiry is - under the circumstances, has the debtor abused the provisions, purpose, or spirit of the Bankruptcy Code? Id.

The substantiality of the repayment to the unsecured creditors, however, is certainly an important factor to consider in determining good faith. Id. at 889. The legislative history of Section 1325(a)(3) indicates that the bankruptcy court could confirm a Chapter 13 plan that "proposes no dividend whatever to holders of allowed unsecured claims" or the bankruptcy court could "deny confirmation of a plan proposing a 95% dividend to holders of such claims." The key to good faith is a finding by the bankruptcy court that the debtor is exercising his best efforts instead of merely abusing the system to delay or avoid payment of legitimate claims.

Here, the Amended Plan clearly fails the requirements of § 1322(a)(2). See <u>In re</u> Trombetta, 2008 WL 80726 *6 (Bankr. S.D. Ill) (Jan. 4, 2008) (ordering the debtor to modify a plan in order to pay the priority unsecured claims in full) and <u>In re</u> Poole, 2007 WL 497776 (Bankr. D.S.C.) (Oct. 18, 2007) (finding that a plan must be denied pursuant to Section 1325 if it does not meet the requirements of Section 1322(a)(2)). <u>See</u> also <u>In re</u> Taylor, 2007 WL 1234932 (Bankr. E.D. Va.) (Apr. 26, 2007) (finding that § 1322(a)(2) requires a Chapter 13 Plan to provide for the full payment of a domestic support obligation) and <u>In re</u> Lepley, 2007 WL 2669128 (Bankr. W.D. Mo.) (September 6, 2007).

In addition to the Amended Plan's failure under § 1322(a)(2), the Court has no basis to assess whether Talley's "good faith." The Amended Plan Order contains a perfunctory acknowledgment that the requirements of § 1325 are met. Beyond that, the Amended Plan Order is silent as to how Section 1325's requirements are met.

It is difficult to fathom how the Amended Plan could have been offered in good faith. Talley specifically asked the bankruptcy court to change the Amended Plan's child support payment requirement from "outside of the plan by income deduction order" to simply "outside of the plan." The former sentence indicates that Talley would be making child support payments in accordance with the financial requirements imposed by the August 2003 Enforcement Order - weekly child support payments of $209.00 and additional weekly payments of $21.00 to bring past due support payments current.

When Talley asked the bankruptcy court to strike the reference to the August 2003 Enforcement Order from the Amended Plan, he eliminated the only evidence that he would actually make his child support payments. While Talley may have every intention of meeting the financial

8

obligations imposed on him by the August 2003 Enforcement Order, he eliminated proof of this intention when he asked the bankruptcy court to strike the legally binding repayment language from the Amended Plan. As the saying goes, the road to hell is paved with good intentions. It is clear that Talley was not exercising his "best efforts" when he proffered the Amended Plan. Thus, the Court can only conclude that the bankruptcy court erred as a matter of law when it confirmed it. Reversal of the Amended Plan Order is proper and remand of the case to the bankruptcy court is necessary so that hearings can be conducted to ensure that Talley proffers an acceptable Second Amended Plan.

The Court's decision to remand this case is further supported by the following three factors. First, Talley failed to make timely child support payments either prior to the state court's entry of the August 2003 Enforcement Order or as part of his Chapter 13 case. See Dkt. 1, Ex. 13 at p. 4 (where Talley acknowledges that he is behind in his support payments). Courts have confirmed Chapter 13 plans that allow a debtor to make reduced domestic support payments. However, Talley asks the Court for too much latitude here. The Amended Plan makes no real allowance for child support payments and Talley has already demonstrated that without significant judicial prodding at the state and federal level, he is not likely to make those payments in a timely manner.

Second, as noted in Section I, review of the transcript form the Confirmation Hearing reveals that the Trustee offered no specific reasons for her recommendation that the bankruptcy court confirm the Amended Plan. Normally, a Trustee's recommendation in favor of confirmation for the Amended Plan carries great weight with the bankruptcy court. See *In re* McGillis, 370 B.R. 720, 750 (W.D. Mich. 2007) ("If the Chapter 13 trustee recommends a Chapter 13 plan for confirmation, the Chapter 13 trustee is affirmatively representing that the plan, in her opinion, conforms with the confirmation standards of Section 1325 . . . . however, the Chapter 13 trustee's recommendation is only

9

evidentiary. It is the debtor's duty to file a Chapter 13 plan, and the burden lies with the debtor to establish that the plan presented for confirmation meets the confirmation standards of Section 1325."). Had the Trustee provided even a single reason for conformation on the record, the Court could have relied it to deny the Department's appeal. However, the scant record before the Court only supports remand.

Third and finally, Talley's failure to address directly the Department's substantive § 1325 argument also supports remand. It lends credence to the Court's unchallenged conclusion that Talley had no viable defense to the Department's substantive § 1325 argument save for the weak, procedural defense offered.

**IV.     Conclusion**

Accordingly, upon due consideration, it is hereby **ORDERED** that the Amended Plan Order (Bankr. Dkt. 25) is **REVERSED** and this case is hereby **REMANDED** to the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division to conduct further proceedings, including if necessary, an evidentiary hearing at which a representative from the Department must appear, and for entry of a final order in accordance with the findings in this Order.

**REVERSED and REMANDED** in Chambers in Jacksonville, Florida on this 8th day of April 2008.

Copies to: Counsel of Record

JOHN H. MOORE II
United States District Judge

10